UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS LEE HENDERSON, SR.,<br><br>Plaintiff,<br><br>v.<br><br>FRESNO COUNTY JAIL, et al.,<br><br>Defendants. | Case No.: 1:24-cv-001569-JLT-SKO<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTIONS FOR INJUNCTIVE RELIEF**<br><br>(Docs. 2 & 11)<br><br>**14-DAY OBJECTION PERIOD** |

Plaintiff Curtis Lee Henderson, Sr., is proceeding pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. section 1983.

**I.   BACKGROUND**

Plaintiff filed a complaint (Doc. 1), and a document titled "Plaintiffs Request for Injunctive Relief Under Immenant [sic] Danger of Serious Physical Harm" (Doc. 2) on December 18, 2024. On January 13, 2025, Plaintiff filed a document titled "Emergency – Plaintiffs Motion to be Placed in Federal Custody Away from Fresno County Jail." (Doc. 11.) On July 3, 2025, Plaintiff filed a document titled "Plaintiffs Notice of Pending Issues." (Doc. 14.)

**II.   PLAINTIFF'S MOTIONS SEEKING INJUNCTIVE RELIEF**

*The Initial Motion*

Plaintiff states he was sexually assaulted by "Corparol Campos" on October 31, 2024, as alleged in his complaint. (Doc. 2 at 1.) Specifically, Plaintiff alleges that the Defendants named in

1  his complaint entered his cell "under a ruse to place him on disciplinary for a violation a year old
2  and for which he had already served." (*Id.*) Plaintiff asserts Campos forced Plaintiff, a disabled
3  elderly man, to stand and then put his hand down Plaintiff's diaper, penetrating Plaintiff's rectum.
4  (*Id.*) Campos's fingernails cut Plaintiff's rectum, causing bleeding each time Plaintiff defecates.
5  (*Id.*) Plaintiff asserts "Defendants refuse" to examine or treat him. (*Id.*) Plaintiff states Defendants
6  were deliberately indifferent and "want the state of nature to take its course." (*Id.* at 2.) He
7  contends injunctive relief will "prevent a substantial risk of this serious injury from ripening into
8  sepsis …." (*Id.*) Plaintiff maintains the Defendants "can be seen on the video system running out
9  of" his cell after the sexual assault. (*Id.*)

Plaintiff contends the Defendants knowingly and unreasonably disregarded "an objectively intolerable risk of harm and they will continue to do so." (Doc. 2 at 2.) Plaintiff asserts that choosing not to examine Plaintiff "after a prison rape" is medically unacceptable and was made in conscious disregard of his health and safety. (*Id.*) Plaintiff asks the Court "to command the Defendants" to have him examined by a proctologist to determine the need for a colonoscopy. (*Id.*) Plaintiff also asks the Court to "command [Defendants] Blackmon, Campos, Sanchez and Lopez to keep a distance of 100 feet" because they continue to harass him and attempt to chill his First Amendment rights. (*Id.*) Plaintiff asserts Defendant Blackmon delivers his "dinner in a nafairious [sic] way as if she contaminated it," resulting in Plaintiff refusing to accept the food four days a week. (*Id.*) Plaintiff asserts he will suffer irreparable harm in the absence of an injunction. (*Id.*)

Next, Plaintiff asserts the balance of hardships tips strongly in his favor because his physical and mental health would be at risk absent an injunction. (Doc. 2 at 3.) He contends he does not have an adequate remedy at law "because damages for past violations of his ADA rights would do nothing to prevent further violations which are likely." (*Id.*) Plaintiff contends that the public has a strong interest "in enforcement of the ADA," and an "injunction is in the interest of justice and must be commanded on the Defendants." (*Id.*)

### *The Second Motion*

Plaintiff states he is fear for his life "in the custody of John Zioni as a direct result of the

2

1  complaint." (Doc. 11 at 1.) Plaintiff requests to be transferred "to a choice of the Court other than
2  Fresno" to protect his "life and mental health." (*Id*.) Plaintiff states that after he obtained copies
3  of the complaint from "Law Librarian Christine Doe," copies were "passed out" on December 9,
4  2024. (*Id*.) Defendant Gill then had Deputy Nunez take Plaintiff to Gill's office where Plaintiff
5  observed Gill reading the complaint. (*Id*.) Plaintiff contends Gill yelled at Plaintiff "saying that
6  someone else [dropped] the ball." (*Id*.) He contends Gill "came so close" that Plaintiff believed
7  Gill was going to "strike" him, and Defendant Blackmon continues to harass him and contaminate
8  his food. (*Id*. at 2.)

9  Next, Plaintiff contends that on December 31, 2024, Defendant Blackmon advised
10  Plaintiff he was to be moved to an unknown location. (Doc. 11 at 2.) When Plaintiff refused and
11  asked to see Lieutenant Greanly, Defendants stated the lieutenant was not working that day and
12  that was the reason for the move. (*Id*.)  Sergeant Torrez entered his cell and stated he "did not
13  know what was going on and more than six John Does dressed all in black riot gear rushed" into
14  the cell. (*Id*.) Plaintiff became fearful, dropped his coffee and pencils and rushed to pack his
15  belongings. (*Id*.) When Sergeant Castro asked Plaintiff whether he was "trying to trip" his
16  officers, Plaintiff responded he accidently dropped his items "in a rush." (*Id*.) When Castro
17  advised Plaintiff the deputies were coming in, Plaintiff asked Castro "not to enter and assault"
18  him "forcing him to defend himself." (*Id*.) Plaintiff submitted to handcuffs and "the John Does
19  wrapped" his upper body "in a Velcro with a [strap]" over his right shoulder. (*Id*.) Plaintiff
20  contends "the John Does then picked" him up from his wheelchair, causing the strap to choke
21  him. (*Id*.) When Plaintiff told them he could not breathe, they dropped him on the floor and
22  wrapped his legs in the same Velcro material. (*Id*.) One John Doe sat of Plaintiff's feet and
23  Plaintiff states his "left foot and right ankle may be fractured." (*Id*.) Plaintiff states he "passed
24  out" and awakened with his feet in the air "as these John Does held him up and he fell out of the
25  Velcro contraption." (*Id*. at 3.) He contends he was placed "in the hands of the Defendant who
26  sexually assault him," his possessions were confiscated, his canteen was destroyed, and he was
27  placed "in freezing conditions with no blankets." (*Id*.) He has been unable to shower and stated
28  his "cell is mentally affecting" him. (*Id*.) Plaintiff states he has requested to be housed in the

"main jail 2nd floor to keep from having a mental breakdown" and requests that the Court have him "removed from Fresno County Jail." (*Id.*)

### *The Notice of Issues*

In his "Notice of Pending Issues" filed on July 3, 2025, Plaintiff simply states this action "has been pending for more than 120 days." (Doc. 14.)

### III.   DISCUSSION

#### A.  Legal Standards

"A preliminary injunction is an extraordinary remedy never awarded as of right."[1] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20.

Federal courts are courts of limited jurisdiction and in considering a request for preliminary injunctive relief, the Court is bound by the requirement that as a preliminary matter, it have before it an actual case or controversy. *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983); *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). If the Court does not have an actual case or controversy before it, it has no power to hear the matter in question. *Id*. Requests for prospective relief are further limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act, which requires that the Court find the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *See also Miller v. French*, 530 U.S. 327, 333 (2000) (the PLRA "establishes standards for the entry and termination of prospective relief in civil actions challenging conditions at prison facilities").

Furthermore, the pendency of this action does not give the Court jurisdiction over prison

---

[1] "The standard for a [temporary restraining order] is the same as for a preliminary injunction." *Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1092 (N.D. Cal. 2012) (citing *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (citation omitted).

officials in general. *Summers v. Earth Island Inst.*, 555 U.S. 488, 491-93 (2009*); Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010). The Court's jurisdiction is limited to the parties in this action and to the viable legal claims upon which this action is proceeding. *Summers*, 555 U.S. at 491-93; *Mayfield*, 599 F.3d at 969.

A "federal court may issue an injunction [only] if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court." *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983). "[A]n injunction must be narrowly tailored 'to affect only those persons over which it has power,' . . . and to remedy only the specific harms shown by the plaintiffs, rather than 'to enjoin all possible breaches of the law.'" *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004) (quoting *Zepeda*, 753 F.2d at 727, 728 n.1).

### B. Plaintiff's Complaint

A brief review of Plaintiff's 22-page handwritten complaint reveals it names "Fresno County California," John Zanoni, "sheriff of the Fresno County Jail," and approximately 15 individuals employed at that facility. The complaint asserts an unknown number of claims[2] and seeks injunctive relief and damages totaling $10,000,000.

### C. Injunctive Relief Is Not Appropriate

For the reasons set forth below, this Court will recommend Plaintiff's motions for injunctive relief be denied.

#### *Personal Jurisdiction is Lacking*

As noted above, Plaintiff's complaint names the Fresno County Jail and more than a dozen individuals as defendants. No defendant in this action has been served with process, and Plaintiff's complaint has not yet been screened pursuant to 28 U.S.C. § 1915A(a). His complaint

---

[2] The claims are asserted under a heading titled "Cause of Action" asserting numerous factual allegations spanning 14 pages. (*See* Doc. 1 at 5-19.) In his conclusion, Plaintiff states he is suing each Defendant "in his and her official and individual [capacity]" for violations of the Americans with Disability Act and Rehabilitation Act, various federal and California state statutes, First Amendment retaliation, sexual assault, and Eighth Amendment excessive force and deliberate indifference to serious medical need. (*Id*. at 21.)

5

1  will be screened in due course.[3]

2  Service of process will only occur following screening and a finding that Plaintiff has
3  stated one or more cognizable claims. Until the defendants have been served with process by the
4  United States Marshal, this Court lacks personal jurisdiction over any defendant and may not
5  grant the injunctive relief Plaintiff seeks. *See* Fed. R. Civ. P. 65(d)(2); *Murphy Bros., Inc. v.*
6  *Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999); *Ruhrgas AG v. Marathon Oil Co.*, 526
7  U.S. 574, 584 (1999) ("Personal jurisdiction, too, is an essential element of the jurisdiction of a
8  district...court, without which the court is powerless to proceed to an adjudication" [citation &
9  internal quotation omitted]); *Zepeda*, 753 F.2d at 727; *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir.
10 1986) ("A federal court is without personal jurisdiction over a defendant unless the defendant has
11 been served in accordance with Fed. R. Civ. P. 4").

### *Plaintiff Cannot Meet the Winter Factors Required for an Injunction*

13 Additionally, Plaintiff cannot meet all four *Winter* factors required for an injunction: (1)
14 that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the
15 absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is
16 in the public interest." *Winter*, 555 U.S. at 20.

17 Even assuming, *arguendo,* that Plaintiff's motions demonstrate he likely to suffer
18 irreparable harm in the absence of preliminary relief, Plaintiff cannot demonstrate he is likely to
19 succeed on the merits of his claims, a requirement that must be met to obtain injunctive relief.
20 *Winter*, 555 U.S. at 20. In deciding whether a preliminary injunction should issue, the likelihood
21 of success on the merits is the most important factor. *Disney Enterprises, Inc. v. VidAngel, Inc.*,
22 869 F.3d 848, 856 (9th Cir. 2017).

23 Here, Plaintiff's complaint has not yet been screened. Therefore, it is unclear whether
24 Plaintiff has stated cognizable claims entitling him to relief in these proceedings.[4] At the pleading

---

[3] As this Court is one of the busiest district courts in the nation, delays are inevitable.

[4] Plaintiff's complaint will require amendment because it asserts a non-cognizable claim or claims. For example, Plaintiff asserts a violation of "P.C. § 118.1." California Penal Code section 118.1 concerns false reports of peace officers. However, there is no private right of action for violation of criminal statutes. *See Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006); *see also Willis v. City of Los Angeles*, 57 F. App'x 283, 289 (9th Cir. 2002) ("[C]oncerning such matters as perjury, Cal. P.C. 118; filing false

6

stage, the Court is not able to determine questions of the claims' merit which require submission of evidence, versus only a determination as to whether a claim has been plausibly stated. *Barrett v. Belleque*, 544 F.3d 1060, 1062 (9th Cir. 2008). Without a finding that Plaintiff has stated cognizable claims, the likelihood of success on the merits—the first *Winter* factor, and the most important—cannot be determined. Simply put, while the Court accepts the factual allegations of a complaint as true for purposes of screening, the truth of the allegations is not accepted in determining whether a plaintiff is entitled to the extraordinary remedy of injunctive relief. Plaintiff's purported video footage showing the Defendants running from his cell on the date of the alleged sexual assault does not change the analysis. At this stage of the proceedings, whether the video footage supports Plaintiff's claim cannot be determined.

Plaintiff must make a showing that the balance of equities tips in his favor and that an injunction is in the public interest—the third and fourth *Winter* factors.  Here, Plaintiff simply contends that the balance of equities tips in his favor and that an injunction is in the public interest; he does not make the required showing. Even assuming Plaintiff had made the required showing regarding the third and fourth *Winter* factors, Plaintiff's inability to meet the first *Winter* factor, the likelihood of success on the merits, is fatal to his requests as *all four factors* must be met.

Additionally, Plaintiff's request to be transferred from the Fresno County Jail to a federal prison facility is not narrowly drawn. *Miller*, 530 U.S. at 333. It is not the least intrusive means necessary to correct alleged violation. *Id.* Even were a transfer appropriate, a transfer from a county jail facility to a federal prison facility is not necessary.

In sum, Plaintiff is not entitled to injunctive relief.

### IV.    CONCLUSION AND RECOMMENDATIONS

Accordingly, this Court **HEREBY RECOMMENDS** that Plaintiff's motions for injunctive relief (Docs. 2 & 11) be **DENIED**.

---

police reports, Cal. P.C. 118.1; offering false evidence, Cal. P.C. 132; battery, Cal. P.C. 242[,] the district court properly granted summary judgment to the appellees, finding that the statutes cited do not create private rights of action").

7

1        These Findings and Recommendations will be submitted to the United States District
2   Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  **Within 14 days**
3   after being served with a copy of these Findings and Recommendations, a party may file written
4   objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to
5   Magistrate Judge's Findings and Recommendations" and **shall not exceed fifteen (15) pages**
6   without leave of Court and good cause shown. The Court will not consider exhibits attached to
7   the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference
8   the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise
9   reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation
10  may be disregarded by the District Judge when reviewing these Findings and Recommendations
11  under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time
12  may result in the waiver of certain rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839
13  (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **July 10, 2025**                                    /s/ *Sheila K. Oberto*
                                                              UNITED STATES MAGISTRATE JUDGE